William D. Naeve (SBN 92270)
  wnaeve@murchisonlaw.com
Bryan M. Weiss (SBN 128679)
  bweiss@murchisonlaw.com
**MURCHISON & CUMMING, LLP**
801 S. Grand Avenue, Suite 900
Los Angeles, CA  90017
(213) 623-7400

Attorneys for Plaintiffs,
FIRST MERCURY INSURANCE COMPANY
and THE NORTH RIVER INSURANCE
COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY and THE NORTH RIVER INSURANCE COMPANY<br><br>             Plaintiffs,<br><br>        vs.<br><br>WEYERHAEUSER NR COMPANY, a Washington corporation, ASPEN INSURANCE UK LIMITED, a company organized under the laws of England; LEXINGTON INSURANCE COMPANY, a Delaware corporation; NATIONAL INTERSTATE INSURANCE COMPANY, an Ohio corporation.<br><br>             Defendants,<br><br>GARDNER TRUCKING, INC., a California corporation,<br><br>             Real Party in Interest. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

        Plaintiffs FIRST MERCURY INSURANCE COMPANY ("FMIC") and THE NORTH

RIVER INSURANCE COMPANY ("North River") hereby allege as follows:

//

## JURISDICTION AND VENUE

1.      The United States District Court for the Central District of California has original jurisdiction over this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a) and (b)(2) because the events or omissions that precipitated the claims and gave rise to this action occurred in this judicial district, including the issuance of the insurance contracts at issue and the filing of the underlying action entitled *Peter Alfaro v. Weyerhaeuser Company, et al.*, Los Angeles County Superior Court, Case No. BC646685 (the "Underlying Action") for which Defendants WEYERHAEUSER NR COMPANY ("Weyerhaeuser") and ASPEN INSURANCE UK LIMITED ("Aspen") seek coverage under policies of insurance issued by FMIC and North River to Gardner Trucking, Inc. in this judicial district.

## NATURE OF THE ACTION

3.      As more fully set forth below, this is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for the purpose of determining an actual controversy between the parties with respect to the parties' obligations under various contracts of insurance.

**A.      PARTIES**

4.      Plaintiff FMIC,  a corporation, was and is an insurance company organized and existing under the laws of the State of Michigan, with its statutory home office in the State of Illinois.  FMIC is authorized to conduct business in the State of California.

5.      Plaintiff North River, a corporation, was and is an insurance company organized and existing under the laws of the State of New Jersey, with its principal place of business in the State of New Jersey.  North River is authorized to conduct business in the State of California.

6.      Defendant Weyerhaeuser, a corporation, was and is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in

the State of Washington.

7.     Defendant Aspen, a private limited company, was and is an insurance company organized and existing under the laws of England, with its principal place of business in London, England.

8.     Upon information and belief, Defendant Lexington Insurance Company ("Lexington") is a business entity organized under the laws of Delaware that, at all relevant times, was engaged in the business of selling insurance policies in the State of California.

9.     Upon information and belief, Defendant National Interstate Insurance Company ("National") is a business entity organized under the laws of Ohio that, at all relevant times, was engaged in the business of selling insurance policies in the State of California.  National is sued only in its capacity as an excess insurer to Gardner Trucking, Inc. ("Gardner") and not a primary insurer as discussed below.

10.     Real Party in Interest Gardner Trucking, Inc., a corporation, was and is a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California. Gardner Trucking, Inc. is the named insured under the policies of insurance upon which FMIC and North River seek declaratory relief in this action, and is therefore a real party in interest in this action as the party with which the contract of insurance was made.  Gardner Trucking, Inc. is also a party to the "Dedicated Truckload Master Motor Carrier Contract (U.S.)" ("Carrier Contract") which forms the basis upon which Weyerhaeuser claims additional insured coverage under the FMIC and North River policies and is also a real party in interest in this action as a party to the Carrier Contract.

# FACTUAL BACKGROUND

## B.     THE CARRIER CONTRACT

11.     Weyerhaeuser entered into the Carrier Contract with Gardner Trucking effective July 20, 2009.  Paragraph "10. Insurance," subparagraph 10.1, states that "carrier will at all times during the Term maintain insurance as specified in Attachment D, Insurance." Subparagraph "10.6" provides that "Weyerhaeuser will be named as an additional insured or

a loss payee on all insurance policies." In turn, "Attachment D" obligates Gardner Trucking, Inc. to *"maintain insurance of the types and amounts specified below."* (Italics added.) A true and correct copy of the Carrier Contract is attached hereto as Exhibit A.

12.   The "types" of insurance "specified" in "Attachment D" consist of "Workers Compensation Insurance," "Employers Liability Insurance," "Automobile or Truck Liability Insurance," "Cargo Insurance," "Comprehensive General Liability Insurance," and "Fidelity Insurance or Fidelity Bond." The "Amounts Specified" in "Attachment D" for "Automobile or Truck Liability Insurance" are set forth in Paragraph "3," as follows:

3.   Automobile or Truck Liability Insurance covering all vehicles and trailers used in connection with this agreement, with limits of no less than

i.   $1,000,000 per occurrence if no hazardous material is transported

ii.   $5,000,000 per occurrence if hazardous material is transported, or

iii.   Any greater coverage as may be required by law or regulations.

**C.   THE UNDERLYING ACTION**

13.   The Underlying Action arises out of an incident resulting in personal injuries sustained by Peter Alfaro which occurred on October 26, 2015, at the Weyerhaeuser Company Distribution Center located in Santa Clarita, California which is owned by Weyerhaeuser NR Company. The Weyerhaeuser Company Distribution Center includes a yard where flatbed trailers are loaded with Weyerhaeuser Company products by employees of Weyerhaeuser Company, the parent company of Weyerhaeuser NR, for subsequent transportation by motor carriers, in this instance, Gardner Trucking, Inc. The defendants in the Underlying Action are Weyerhaeuser Company and Weyerhaeuser NR Company which has been named as a "Doe" defendant.

COMPLAINT FOR DECLARATORY JUDGMENT

14.     On or about October 23, 2015, employees of Weyerhaeuser Company loaded a flatbed trailer full of lumber on the premises of the Weyerhaeuser Company Distribution Center.

15.     On or about October 26, 2015, Mr. Alfaro, a truck driver and employee of Gardner Trucking, Inc. entered the Weyerhaeuser Company Distribution Center located in Santa Clarita, California to haul the flatbed trailer of lumber.  When Mr. Alfaro was tightening the straps around the lumber, the lumber fell on Mr. Alfaro causing injuries to him.  The Complaint in the Underlying action alleges that the defendant "failed to properly secure the load of lumber, which would have prevented this incident" and that "defendants and each of them, and their agents negligently and carelessly loaded the trailer in a manner that created a foreseeable risk of harm to the plaintiff" as they "were aware that lumber would fall off the trailer if not properly loaded prior to October 26, 2015."  A true and correct copy of the Complaint in the Underlying Action is attached hereto as Exhibit B.

**D.     THE NATIONAL PRIMARY POLICY**

16.     National issued "Commercial Auto" policy no. GAR 8199100 03 to Gardner Trucking, Inc. as the named insured for the policy period of October 1, 2015 to October 1, 2016 with a  limit of liability of $1,000,000 (the "National Primary Policy.")

a.     Under the liability coverage for "bodily injury", the National Primary Policy provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

b.     The National Primary Policy includes two (2) "Blanket Additional Insured" endorsements which extend coverage to an organization which Gardner Trucking is "required to add as an additional insured" as "limited" to "the limits of insurance applicable to the additional insured" as set forth in a "written contract" or the Declarations for the National policy, "whichever are less."

c.     The Blanket Additional Insured endorsements further provides that the coverage afforded is "excess over any other valid and collectible insurance available to the

1  additional insured whether primary, excess, contingent or any other basis unless the contract
2  specifically requires that this insurance be primary."

3        E.      THE LEXINGTON EXCESS POLICY

4        17.     Lexington issued "Follow Form Excess Liability Policy" No. 048883243 to
5  Gardner Trucking, Inc. for the policy period of October 1, 2015 to October 1, 2016 with a limit
6  of liability of $2,000,000 (the "Lexington Excess Policy").

7        18.     Under Paragraph "A" of the policy's "Insuring Agreement", Lexington is only
8  obligated to pay "sums the insured becomes legally obligated to pay as Loss Amounts in
9  excess of Underlying Limits by reason of exhaustion of such limits and to which this
10 insurance applies, subject to . . . the terms and conditions of the 'Followed Policy.'"  The
11 phrase "Followed Policy" is defined to mean "the policy shown in Item 6 of the
12 'Declarations.'"  Item 6 of the Lexington policy's Declarations entitled "Followed Policy"
13 states "Insurance Company: PER SCHEDULE OF UNDERLYING INSURANCE."  The
14 "Schedule of Underlying Insurance" for the period October 1, 2015-16 identifies the National
15 Primary Policy as the underlying insurance, with a "per accident" limit of liability of
16 $1,000,000.

17       F.      THE NATIONAL EXCESS POLICY

18       19.     National, in addition to issuing the National Primary Policy to Gardner
19 referenced above,  also issued a second level excess policy, Policy No. EXT0010760-00, that sat
20 above the Lexington Excess Policy (the "National Excess Policy.")  The National Excess Policy
21 provided a $3,000,000 layer of excess coverage that generally "followed form" to the National
22 Primary Policy and the Lexington Excess Policy.

23       G.      THE FMIC EXCESS POLICY

24       20.     FMIC issued Commercial Excess Liability Policy no. MA-EX-0000058210-01 to
25 named insured, Gardner Trucking, Inc., at its address in Chino, CA, with effective dates of
26 October 1, 2015 to October 1, 2016 (the "FMIC Excess Policy.")  The FMIC Excess Policy is
27 excess to (1) the National Primary Policy; (2) the Lexington Excess Policy; and (3) the National
28 Excess Policy.  A true and correct copy of the FMIC Excess Policy is attached as Exhibit C.

21. The FMIC Excess Policy is a "following form" excess policy containing the following insuring agreement:

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which this insurance applies.

We will have the right and duty to defend the insured against any "suit" seeking damages for such "injury or damage" when the "retained limit" has been paid in accordance with the provisions of the "underlying insurance."

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages for "injury or damage."

However, we will have no duty to defend the insured against any "suit" seeking damages for which insurance under this Policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or "suit," for which we have the duty to defend.

But:

(1) The amount we will pay for "ultimate net loss" is limited as described in SECTION II — LIMITS OF INSURANCE; and

(2) Our right and duty to defend ends when we have paid the applicable limit of insurance in the payment of judgments or settlements under this Policy. However, if the Policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have paid the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Policy.

b. The insurance under this Policy will follow the same provisions, exclusions, conditions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However the coverage under this Policy will be no broader than that provided by:

(1)     The applicable "controlling underlying insurance"; and

(2)     Any other "underlying insurance.

22.     The FMIC Excess Policy includes the following definitions:

a.      "Controlling underlying insurance" means a policy of insurance listed in the Schedule of Underlying Insurance and identified as "controlling underlying insurance."

b.      "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

c.      "Injury or damage" means any "injury or damage" covered in the applicable "controlling underlying insurance" arising from an "event."

d.      "Retained limit" means the sum of all "underlying insurance" shown in the Schedule of Underlying Insurance, and any other insurance or self-insurance applicable to the clam or "suit," except insurance specifically written to apply in excess of this policy.

e.      "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

a.      Settlements, judgments, binding arbitration; or

b.      Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

f.      "Underlying insurance" means the policy or policies (including any renewal or replacement of such policies) of insurance listed in the Schedule of Underlying Insurance including the "controlling underlying insurance" and any self insured retentions.

g.      "Underlying insurer" means any insurer who provides a policy of insurance listed in the Schedule of Underlying Insurance.

COMPLAINT FOR DECLARATORY JUDGMENT

**H.      THE NORTH RIVER EXCESS POLICY**

23.      North River issued its Excess Insurance Policy no. 5227983162 to Gardner, at its address in Chino, CA, with effective dates of October 1, 2015 to October 1, 2016 (the "North River Excess Policy.")  The North River Excess Policy is excess to (1) the National Primary Policy; (2) the Lexington Excess Policy; (3) the National Excess Policy; and (4) the FMIC Excess Policy.  A true and correct copy of the FMIC Excess Policy is attached as Exhibit D.

24.      The North River policy is a "following form" excess policy containing the following insuring agreement:

> WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payments of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

> If we are prevented by law from paying on YOUR behalf for coverage provided under his insurance, then we will indemnify you.

> The Definitions, Terms, Conditions, and Exclusions of the "CONTROLLING UNDERLYING INSURANCE" scheduled in Item 5 of the Declarations, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

25.      The North River Excess Policy includes the following definitions:

a.      CONTROLLING UNDERLYING INSURANCE means the policy or policies of insurance as stated in Item 5 of the Declarations.

b.      ULTIMATE NET LOSS means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with the written consent of US, after making proper deduction for all recoveries and salvages.

1   Defense expense payments shall be included within the ULTIMATE

2   NET LOSS, provided that such expenses are included within the terms, conditions, and

3   limits of insurance of any UNDERLYING INSURANCE.

4   c.   UNDERLYING INSURANCE means the policy or policies of insurance

5   as described in Item 5 of the Declarations, including CONTROLLING UNDERLYING

6   INSURANCE.

7   26.   Neither the FMIC Excess Policy nor the North River Excess Policy apply

8   unless and until all the limits of the Lexington Excess Policy and the National Excess Policy

9   have been exhausted, which to date, has not occurred.

10   **I.   THE ASPEN EXCESS POLICY**

11   27.   Aspen issued "Excess Liability Policy" No. KOA094114A0D to Weyerhaeuser

12   Company for the policy period of November 1, 2014 to November 1, 2015 (the "Aspen

13   Policy.")  The Aspen Policy provides coverage in the amount of $10,000,000 per occurrence

14   purportedly in excess of $10,000,000 self-insured retention.

15   28.   The Aspen Policy defines the named insured to mean "Weyerhaeuser

16   Company and: (1) any subsidiaries or divisions of Weyerhaeuser Company."

17   Weyerhaeuser is a wholly-owned subsidiary of Weyerhaeuser Company, and therefore is a

18   named insured under the Aspen policy.

19   29.   The Aspen policy's insuring agreement provides as follows:

20   INSURING AGREEMENT

21   Coverage A:

22   The Company will pay on behalf of the Insured (unless
     prohibited by local law in which case The Company will
23   indemnify the Insured) for Ultimate Net Loss in excess of the
     total applicable limits of liability of underlying insurance set
24   forth under the Schedule of Underlying insurance (hereinafter
     referred to as Schedule A) or any renewals or replacements
25   thereof. With respect to Coverage A, the provisions of all
     underlying policies are incorporated as a part of this policy,
26   except for any obligations to investigate and defend and pay for
     costs and expenses incident to any of the same, the amounts of
27   the limits of liability and the Condition M - Other Insurance
     provision. As to Ultimate Net Loss not covered by underlying

28

insurance set forth under Schedule A, or any renewals or replacements thereof, Coverage B applies.

Coverage B:

As to Ultimate Net Loss not covered by underlying insurances set forth under Schedule A, or any renewals or replacements thereof, The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to pay on behalf of the Insured (unless prohibited by local law in which case The Company will indemnify the Insured) for all sums which the Insured shall be obligated to pay by reason of liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages and expenses, all as more fully defined by the term Ultimate Net Loss on account of:

    1. Bodily Injury

    2. Personal Injury

    3. Property Damage

    4. Advertising Liability

    5. Incidental Professional Liability

caused by or arising out of an Occurrence, event, offense or act anywhere during the Policy Term.

30.    California Insurance Code § 11580.9(c) provides that

"Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on the policy, but shall be excess over all other valid and collectible insurance applicable to the same loss with limits up to the financial responsibility requirements specified in Section 16056 of the Vehicle Code. In that event, the two or more policies shall not be construed as providing concurrent coverage, and only the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary and the policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of the owner, tenant, or lessee while acting in the course and scope of their employment."

Since the accident giving rise to the Underlying Action arose out of the loading or

unloading of a trailer, the trailer is a "motor vehicle" pursuant to the provisions of California

Insurance Code § 11580.6(a). The Aspen Policy was issued to the owner, tenant, or lessee of the Weyerhaeuser Company Distribution Center where the loading of the trailer occurred, thus under California Insurance Code § 11580.9(c), the Lexington Excess Policy, and those policies following form to that policy (including the FMIC Excess Policy and the North River Excess Policy,") to the extent those policies apply, are "conclusively presumed" to be excess to the coverage afforded to Weyerhaeuser under the Aspen Policy.

31.     Defendants Weyerhaeuser and Aspen dispute such contentions and contend that the FMIC Excess Policy and the North River Excess Policy affords coverage for loss of Weyerhaeuser in excess of the $1 million limit of the National Primary Policy but primary to the Aspen Policy and any other insurance affording to Weyerhaeuser in excess of the Aspen Policy.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT: FMIC OWES NO DUTY TO INDEMNIFY WEYERHAEUSER UNDER THE FMIC EXCESS POLICY

32.     FMIC hereby incorporates by reference Paragraphs 1 through 31 of this complaint as though fully set forth herein.

33.     By virtue of the foregoing, there now exists an actual, justiciable controversy as between FMIC, on the one hand, and Defendants Weyerhaeuser and Aspen, on the other hand, regarding whether the FMIC Excess Policy provides coverage for Weyerhaeuser in the Underlying Action in that none of the underlying policies below the FMIC Excess Policy paid its limits with respect to the settlement of the Underlying Action, a necessary condition to coverage under said policy. A judicial determination and declaration is therefore necessary and appropriate as to whether the FMIC Excess Policy provides coverage for Weyerhaeuser in the Underlying Action.

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT: NORTH RIVER OWES NO DUTY TO INDEMNIFY WEYERHAEUSER UNDER THE NORTH RIVER EXCESS POLICY

34.     North River hereby incorporates by reference Paragraphs 1 through 33 of this

1  complaint as though fully set forth herein.

2      35.    By virtue of the foregoing, there now exists an actual, justiciable controversy as

3  between North River, on the one hand, and Defendants Weyerhaeuser and Aspen, on the

4  other hand, regarding whether the North River Excess Policy provides coverage for

5  Weyerhaeuser in the Underlying Action in that none of the underlying policies below the

6  North River Excess Policy paid its limits with respect to the settlement of the Underlying

7  Action, a necessary condition to coverage under said policy.  A judicial determination and

8  declaration is therefore necessary and appropriate as to whether the North River Excess

9  Policy provides coverage for Weyerhaeuser in the Underlying Action.

10  **THIRD CAUSE OF ACTION**

11  **DECLARATORY JUDGMENT: THE FMIC EXCESS POLICY AND THE**
    **NORTH RIVER EXCESS POLICY ARE EACH EXCESS TO THE ASPEN**

12  **POLICY**

13      36.    FMIC and North River hereby incorporate by reference Paragraphs 1 through 35

14  of this complaint as though fully set forth herein.

15      37.    By virtue of the foregoing, there now exists an actual, justiciable controversy as

16  between FMIC and North River, on the one hand, and Defendants Weyerhaeuser and Aspen,

17  on the other hand, regarding whether the Aspen Policy is primary or whether, to the extent

18  the FMIC Excess Policy and/or the North River Excess Policy provide coverage at all, the

19  FMIC Excess Policy and/or the North River Excess Policy are primary to the Aspen Policy.

20  **PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiffs FMIC and North River pray for judgment as follows:

22      1.    For a declaration that in the action entitled *Peter Alfaro v. Weyerhaeuser Company,*

23  *et al.*, Los Angeles County Superior Court, Case No. BC646685, FMIC owes no duty to

24  indemnify Defendant Weyerhaeuser and/or Aspen under its Commercial Excess Liability

25  Policy no. MA-EX-0000058210-01 issued to Gardner Trucking, Inc.;

26      2.    For a declaration that in the action entitled *Peter Alfaro v. Weyerhaeuser Company,*

27  *et al.*, Los Angeles County Superior Court, Case No. BC646685, North River owes no duty to

28  indemnify Defendant Weyerhaeuser or Aspen under its Excess Insurance Policy no.

13

1 | 5227983162 issued to Gardner Trucking, Inc.;

2 |      3.     In the alternative, in the event that the Court does determine that either FMIC or

3 | North River owes an obligation to indemnify Weyerhaeuser and/or Aspen under its

4 | respective policies, such policies are excess to Aspen "Excess Liability Policy" No.

5 | KOA094114A0D;

6 |      4.     For costs of suit herein; and

7 |      5.     For such other and further relief as this Court deems just and proper.

8 |

9 | DATED: September 8, 2020          William D. Naeve

10 |          Bryan M. Weiss
         **MURCHISON & CUMMING, LLP**

11 |

12 |          By:  /s/ William D. Naeve

13 |          William D. Naeve
         Bryan M. Weiss

14 |          Attorneys for Plaintiff,
         FIRST MERCURY INSURANCE

15 |          COMPANY and THE NORTH RIVER
         INSURANCE COMPANY.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |